UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHELLE M.,

                    Plaintiff,                          **DECISION AND ORDER**

          v.
                                                       6:22-CV-00911 CDH
COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

_____

## INTRODUCTION

Plaintiff Michelle M. ("Plaintiff") seeks review of the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant") denying her application for supplemental security income ("SSI"), pursuant to Title XVI of the Social Security Act (the "Act"). (Dkt. 1). Under Rules 5 through 8 of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g) and Local Rule of Civil Procedure 5.5(d), the matter has been presented for decision by the parties' filing of motions for judgment on the pleadings. (*See* Dkt. 10; Dkt. 13; Dkt. 14). For the reasons that follow, the Court denies Plaintiff's motion and grants the Commissioner's motion.

## BACKGROUND

On May 10, 2019, Plaintiff protectively filed an application for SSI. (Dkt. 4 at 15, 90).[1] Her application was initially denied on October 30, 2019, and upon

---

[1]    In referencing the administrative transcript, the Court has referred to the page numbers generated by CM/ECF and found in the upper right corner of the documents.

reconsideration on January 30, 2020. (*Id.* at 15, 128-43). Plaintiff requested a hearing before an administrative law judge ("ALJ") (*id.* at 144), which was held on November 3, 2020 (*id.* at 38-69). On December 29, 2020, the ALJ issued an unfavorable decision. (*Id.* at 12-36). Plaintiff sought review from the Appeals Council, which denied her request on September 26, 2022. (*Id.* at 6-11). This action followed. (Dkt. 1).

## LEGAL STANDARD

### I. Administrative Determination of Disability

The Social Security Administration's ("SSA") regulations establish a five-step, sequential evaluation that an ALJ follows in determining whether a claimant is disabled within the meaning of the Act. *See Sczepanski v. Saul*, 946 F.3d 152, 156 (2d Cir. 2020); 20 C.F.R. § 416.920(a). At step one, the ALJ determines whether the claimant is currently engaged in substantial gainful work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is not, the ALJ continues to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act. *Id.* § 416.920(a)(4)(ii). An impairment is "severe" within the meaning of the Act if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id.* § 416.920(c).

If the claimant has at least one severe impairment, the ALJ proceeds to step three. There, the ALJ determines whether the claimant's impairment or impairments meet or medically equal the criteria of the impairments listed in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(a)(4)(iii). If the claimant does not have an impairment that both meets or medically equals a Listing and satisfies the Act's durational requirement, *see id.* § 416.909, the ALJ must determine

- 2 -

the claimant's residual functional capacity ("RFC"), *id*. § 416.920(e). "The Social Security regulations define residual functional capacity as the most the claimant can still do in a work setting despite the limitations imposed by his impairments." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *see* 20 C.F.R. § 416.945.

At step four, the ALJ determines whether, in light of the RFC assessment, the claimant is capable of performing any past relevant work. 20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is unable to perform any past relevant work, the ALJ proceeds to the fifth and last step. At this step, the burden shifts to the Commissioner to demonstrate that, taking into account the claimant's age, education, work experience, and RFC, the claimant is capable of performing substantial gainful work that exists in the national economy. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see* 20 C.F.R. § 416.920(a)(4)(v).

## II.    Review by the Court

The Court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying an application for disability benefits. It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted). Instead, in performing its review, the Court is "limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Selian*, 708 F.3d at 417 (citation omitted). If the Commissioner's findings of fact are supported by substantial evidence, they are "conclusive." 42 U.S.C. § 405(g). In other words, "[i]f there is substantial evidence to support the determination, it must be upheld." *Selian*, 708 F.3d at 417.

"Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

## DISCUSSION

### I.    The ALJ's Decision

The ALJ applied the five-step, sequential evaluation described above in determining whether Plaintiff was disabled. The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since May 10, 2019, the application date. (Dkt. 4 at 17). The ALJ found at step two that Plaintiff had the following severe impairments: "bipolar disorder, posttraumatic stress disorder (PTSD), anxiety, obsessive-compulsive disorder, asthma, and degenerative disc disease of the lumbar spine with radiculopathy [.]" (*Id.*). The ALJ further found that Plaintiff had the non-severe impairment of opioid dependence, in remission. (*Id.* at 18).

The ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the Listings. (*Id.* at 18-20). At step three, the ALJ particularly considered the requirements of Listings 1.04, 3.03, 12.04, 12.06, and 12.15. (*Id.*). The ALJ assessed Plaintiff's RFC and determined that Plaintiff retained the ability to perform light work as defined in 20 C.F.R. § 416.967(b) except that Plaintiff:

can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes and scaffolds; can never work in humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold and extreme heat; is able to perform simple, routine and repetitive tasks, but not at a production rate pace (e.g., assembly line work); is able to perform simple work-related decisions; is able to occasionally interact with supervisors, coworkers and the public; and is able to deal with changes in the work setting such that she is able to make simple work-related decisions.

(*Id.* at 20).

The ALJ then proceeded to step four and found that Plaintiff was unable to perform any past relevant work. (*Id.* at 27). The ALJ found at step five that—considering Plaintiff's age, education, work experience, and RFC—there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 28). The ALJ ultimately concluded that Plaintiff had not been disabled, as defined in the Act, at any time from the application date date through the date of the ALJ's decision.  (*Id.* at 28-29).

## II.    The Commissioner's Final Determination is Supported by Substantial Evidence and Does Not Contain a Reversible Error

Plaintiff argues that: (1) the ALJ committed reversible error because he found the opinion of psychiatric consultative examiner Dr. Janine Ippolito persuasive but failed to incorporate all of the limitations identified by Dr. Ippolito into his RFC finding; and (2) the ALJ committed reversible error in assessing the opinion of licensed master social worker ("LMSW") Holley Adams, Plaintiff's mental health counselor. (Dkt. 10-1 at 1). For the reasons that follow, the Court is unpersuaded by these arguments.

A.    <u>**Standard for Assessment of Medical Opinions**</u>

In adjudicating a disability application, an ALJ must consider and weigh the evidence of record, including medical opinions. *See Matta*, 508 F. App'x at 56; *see also* 20 C.F.R. § 416.920c(b) ("We will articulate in our determination or decision how persuasive.  we find all of the medical opinions and all of the prior administrative medical findings in your case record."). The Commissioner's regulations set forth the following factors that the ALJ considers when assessing the persuasiveness of a medical opinion: (1) supportability, meaning that, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be"; (2) consistency, meaning that, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be"; (3) relationship with the claimant, including the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and whether the relationship included a physical examination; (4) specialization, meaning that the opinion of a specialist "may be more persuasive about medical issues related to his or her area of specialty" than the opinion of a non-specialist; and (5) "other factors that tend to support or contradict a medical opinion," which includes but is not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA] disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c).

Supportability and consistency are the most important factors and must be

discussed in the ALJ's decision. *Id.* §416.920c(b)(2). The ALJ may, but is not required to, explain how he or she considered the other factors. *Id.*

### B.    Assessment of Dr. Ippolito's Opinion

Dr. Ippolito examined Plaintiff on October 15, 2019. (Dkt. 5 at 206-10). She opined that Plaintiff was "able to understand, remember or apply simple directions and instructions, sustain an ordinary routine and regular attendance at work, [and] maintain personal hygiene and appropriate attire with no evidence of limitation." (*Id.* at 209). Dr. Ippolito further opined that Plaintiff could "understand, remember or apply complex instructions, interact adequately with supervisors, co-workers and the public, sustain concentration and perform a task at a consistent pace and demonstrate awareness of normal hazards and take appropriate precautions with mild limitations." (*Id.*). Dr. Ippolito identified moderate limitations in using reason and judgment and making work-related decisions and moderate-to-marked limitations in regulating emotions, controlling behavior, and maintaining well-being. (*Id.*).

The ALJ found Dr. Ippolito's opinion persuasive, explaining that her "findings, diagnoses and limitations" were "consistent with the record, including the objective findings on clinical examination and diagnostic testing, and [Plaintiff's] treatment history." (*Id.* at 25-26). The ALJ noted in particular the "largely unimpressive findings on mental status examination" and Plaintiff's "self-reporting of her symptoms and work-related functioning." (*Id.* at 26).

Plaintiff argues that the ALJ erred in his assessment of Dr. Ippolito's opinion because he did not "explain why he did not include additional limitations in

- 7 -

regulating emotions, controlling behavior, and maintaining well being." (Dkt. 10-1 at 12). This argument is unpersuasive. It is the ALJ's duty to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). "In arriving at the RFC, the ALJ's reasoning must always be sufficiently discernible as to allow a reviewing court to ensure that the ALJ employed the proper standards and rendered a decision supported by substantial evidence." *Jennifer S. v. Comm'r of Soc. Sec.*, 771 F. Supp. 3d 256, 266 (W.D.N.Y. 2025) (quotation and citation omitted).

Here, the Court is able to discern the ALJ's reasoning and conclude that his determination was supported by substantial evidence. The Commissioner's regulations note that examples of "the abilities to regulate emotions, control behavior, and maintain well-being in a work setting" include "[r]esponding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00E4. The RFC finding formulated by the ALJ contains significant limitations related to these abilities. For example, the ALJ limited Plaintiff to making only simple work-related decisions, related to her difficulties dealing with changes in a work setting. (Dkt. 4 at 20). The ALJ further found that Plaintiff could not work at a "production rate pace" and could only occasionally interact with supervisors, coworkers, and the public, both

of which are limitations that address Plaintiff's difficulties in regulating her emotions, controlling her behavior, and maintaining her well-being. (*See id.*).

The ALJ accordingly did not, as Plaintiff argues, "ignore" the moderate-to-marked limitations identified by Dr. Ippolito. (*See* Dkt. 10-1 at 13). Instead, the ALJ crafted an RFC finding that contained significant limitations corresponding to Dr. Ippolito's findings. Indeed, courts have repeatedly found that moderate-to-marked limitations in regulating emotions, controlling behavior, and maintaining well being are adequately accounted for with similar limitations. *See, e.g., Kara L. v. Comm'r of Soc. Sec.*, No. 5:25-CV-00086 (ML), 2026 WL 809833, at *4 (N.D.N.Y. Mar. 24, 2026); *Lisa Marie C. v. Comm'r of Soc. Sec.*, No. 5:23-CV-1025 (GTS/TWD), 2024 WL 4350754, at *10 (N.D.N.Y. Sept. 3, 2024), *adopted*, 2024 WL 4347794 (N.D.N.Y. Sept. 30, 2024); *Hollie S. v. Comm'r of Soc. Sec.*, No. 21-CV-01075, 2023 WL 5019601, at *6 (W.D.N.Y. Aug. 7, 2023); *Rice v. Comm'r of Soc. Sec.*, No. 18-CV-1369, 2020 WL 4283894, at *4 (W.D.N.Y. July 27, 2020). The Court finds no basis for remand in the ALJ's consideration of Dr. Ippolito's opinion.

### C.    Assessment of LMSW Adams' Opinion

Plaintiff next argues that in assessing LMSW Adams' opinion, the ALJ "failed to explain the supportability and consistency factors as required by regulation, and to the extent the ALJ did address these, they were conclusory and relied on selectively chosen evidence." (Dkt. 10-1 at 13). This argument is unpersuasive.

LMSW Adams completed a medical source statement on November 2, 2020, in which she opined that Plaintiff "would be entirely precluded from or be unable to perform for more than 20% of an eight-hour workday nearly all work-related mental

activities considered." (Dkt. 4 at 27; *see* Dkt. 5 at 992-97). LMSW Adams further opined that Plaintiff had marked limitations in understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. (Dkt. 5 at 997). She concluded that Plaintiff would be off task or otherwise less production for more than 30% of a normal workday or workweek and would be absent more than four days per month. (*Id.* at 995-996).

The ALJ found LMSW Adams' opinion not persuasive. (Dkt. 4 at 27). He explained that LMSW Adams appeared to be basing her conclusions on Plaintiff's "presentation during a period when she was dealing with several specific stressors," and that LMSW Adams' conclusions were not supported by Plaintiff's usual presentation and by her typical findings on mental status examinations. (*Id.*). The ALJ further explained that LMSW Adams' opinion was inconsistent with that of the other medical sources of record. (*Id.*).

The Court finds no error in the ALJ's assessment of LMSW Adams' opinion. The ALJ considered supportability and consistency, as required by the applicable regulations, and provided adequate explanations for his conclusions. While Plaintiff argues that the ALJ's discussion was too cursory (*see* Dkt. 10-1 at 15-16), it is sufficiently detailed to permit the Court to understand the basis for the ALJ's determination. In particular, the ALJ explained that during the time period on which LMSW Adams based her opinion, Plaintiff was experiencing a number of unusual stressors, including problems with her significant other, the need to secure new housing, and an upcoming disability hearing. (Dkt. 4 at 25). The ALJ further noted

that, when not experiencing this confluence of unusually stressful situations, Plaintiff "responded well to treatment with medication and counseling, such that findings on mental status examination were mostly unremarkable." (*Id*.). The ALJ also appropriately note the inconsistencies between LMSW Adams' opinion and the other medical opinions of record.

Plaintiff's additional arguments regarding the ALJ's assessment of LMSW Adams' opinion are unpersuasive. Plaintiff argues that the ALJ relied on "selectively chosen evidence" in finding LMSW Adams' opinion unpersuasive. (Dkt. 10-1 at 16). But the ALJ reviewed the evidence cited by Plaintiff; he simply did not give it the weight she thinks he ought to have. "[T]he relevant question is not whether there is substantial evidence to support [Plaintiff's] view; instead, the Court must decide whether substantial evidence supports the ALJ's decision." *Ingrassia v. Colvin*, 239 F. Supp. 3d 605, 623 (E.D.N.Y. 2017) (quoting *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013)). Here, the ALJ's determination was supported by Dr. Ippolito's opinion, the opinions of the state agency reviewing medical sources, and the treatment records showing generally benign results on mental status examinations (*see, e.g.,* Dkt. 5 at 692-94, 734, 759). Remand is not warranted simply because there is evidence in the record that could have supported a different conclusion.

Plaintiff also argues that the ALJ should not have credited Dr. Ippolito and the state agency reviewing medical sources over LSMW Adams due to LMSW Adams' treating relationship with Plaintiff. (Dkt. 10-1 at 18-19). But relationship with the claimant is only one of the factors that the ALJ considers in assessing persuasiveness, and the ALJ is free to credit a non-treating source's opinion where it is more

consistent with and supported by the record. *See, e.g., Allen v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 327, 336-37 (W.D.N.Y. 2018) ("Plaintiff contends that it is improper for an ALJ to rely on a non-treating, non-examining medical source and credit a state consultant over examining physicians. However, contrary to Plaintiff's assertions, it is well-settled that the opinion of a non-examining source may be credited over that of an examining physician, particularly where the examining source's opinion is contradicted by the record.") (quotation marks and citation omitted).

In sum, the Court finds no reversible error in the ALJ's assessment of Dr. Ippolito's or LMSW Adams' opinions and thus finds no reason to disturb the Commissioner's decision on Plaintiff's application.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 13) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated:      March 30, 2026
            Rochester, New York